**Opinion issued March 13, 2018**



In The

# Court of Appeals

For The

# First District of Texas

———————————————

## NO. 01-17-00040-CR

———————————————

**DAVID LEE COOPER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 232nd District Court**
**Harris County, Texas**
**Trial Court Case No. 1434976**

## MEMORANDUM OPINION

Appellant David Lee Cooper pleaded guilty to the offense of sexual assault of a child without an agreed recommendation as to punishment. *See* TEX. PENAL CODE ANN. § 22.011(a)(2)(A) (West Supp. 2017). Appellant also pleaded true to an enhancement paragraph alleging that he had been previously convicted of the

offense of robbery.  Following the preparation of a pre-sentence investigation (PSI) report, the trial court conducted a sentencing hearing.  At the conclusion of the hearing, the trial court found Appellant guilty of the offense of sexual assault of a child, found the enhancement allegation contained in the indictment to be true, and sentenced Appellant to life in prison.  In one issue, Appellant contends that the trial court erred when it did not permit him to elicit testimony from the complainant regarding past sexual conduct.

We affirm.

## Background

Appellant was charged by indictment with the felony offense of sexual assault of a child.  The indictment read as follows:

DAVID LEE COOPER, hereafter styled the Defendant, . . . on or about NOVEMBER 2, 2002, did then and there unlawfully, intentionally and knowingly cause the penetration of the SEXUAL ORGAN of [B.L.], hereinafter called the Complainant, a person younger than seventeen years of age, by placing HIS SEXUAL ORGAN in the SEXUAL ORGAN of the Complainant.

Before the commission of the offense alleged above, on JANUARY 8, 1986, in Cause No. 0425139, in the 176TH District Court of HARRIS County, Texas, the Defendant was convicted of the felony offense of ROBBERY.

On October 24, 2016, Appellant pleaded guilty to the charged offense of sexual assault of a child.  He also pleaded true to the enhancement allegation.  At his

2

sentencing hearing, the State offered the testimony of several witnesses, including the complainant, B.L.

B.L. was born in 1985. She testified that, when she was about 14 years old, her father physically abused her, resulting in her being taken into CPS custody. She then lived in various group homes before being placed with a foster family.

After being with the family for about two months, B.L. ran away. She lived on the streets, surviving by begging from strangers and sleeping on the public bus. While living on the streets, B.L. ran into a woman that she knew from the foster-care system. The woman introduced B.L. to a man who forced B.L. into prostitution. She testified that if she refused to have sex for money the man would hit her. B.L. stated that she was 15 years old at the time.

B.L. testified that eventually she got away from the man who was forcing her into prostitution. She indicated that one day she got into a cab and used the money she had earned that night to flee.

B.L. stated that she started a relationship with a man who became her boyfriend. After a short time in that relationship, B.L. became pregnant in the fall of 2002. B.L. began living with her boyfriend's grandmother.

At the time, B.L.'s boyfriend was in jail. When she heard that her boyfriend was on the other side of town, B.L. rode the bus to find him. On the return trip home, B.L. was waiting at the bus top when Appellant pulled up in his truck. B.L. indicated

that Appellant was wearing what appeared to be an auto mechanics uniform. Appellant offered B.L. a ride. At first, she declined, but then she accepted because she was "tired of waiting for the bus."

The State's attorney then asked B.L. whether, on the date that Appellant offered her a ride, she was "still having sex for money." B.L. replied, "Not that I recall." He then asked, "Was it your intention[,] do you remember[,] to have sex with [Appellant] for money?" B.L. answered, "No. Not that I recall."

B.L. stated that Appellant agreed to give her a ride to the south side of Houston. As they drove, B.L. became uncomfortable when Appellant turned in the wrong direction. Eventually, Appellant pulled into a parking lot. B.L. got out of the truck and began to walk. Appellant followed her at a slow pace in the truck and convinced her to get back in, promising that he would take her where she asked. B.L. stated that Appellant then drove down a dark side street. She said that it then "turned physical." Appellant placed her in a headlock with his arm around her neck, pulling her close to him.

B.L. agreed that she had been with other men in vehicles but indicated that this was different. She described Appellant's actions as forceful and stated that she was scared. B.L. said that there was no negotiation or discussion about money or what would happen.

4

B.L. testified that Appellant drove to the parking lot of an apartment complex. He still had his arm around her neck. Appellant took off B.L.'s clothes and forced her to have oral and vaginal sex. B.L. did not fight back because she was afraid that Appellant would kill her. B.L. indicated that she had no control over the situation and was powerless.

Appellant sexually assaulted B.L. for an hour. He then drove to a convenience store to buy a cigar, leaving B.L. in the truck. Wearing only socks and carrying her clothing, B.L. got out of the truck and ran for help. She told people at the store that she had been raped. Two women offered to drive B.L. to the hospital where she had a sexual assault examination.

A few days after the sexual assault, B.L. met with a Houston police officer and provided a statement. At the sentencing hearing, B.L. admitted that she had given a false name and had lied about her age at the hospital and to the police. She said that she had claimed to be 18 years old because she did not want to return to foster care.

B.L. testified that she did not hear any news about the case for twelve years. Then, in 2014, she was contacted by a police officer about the case.

On cross-examination, defense counsel questioned B.L. regarding the 2002 statement she made to police. Specifically, the defense sought to highlight the inconsistencies between the account of the sexual assault B.L. had provided in her

5

2002 statement to police and the account that she provided in her testimony at the sentencing hearing.

The defense provided B.L. with a copy of the 2002 statement and asked her to read it. In the statement, B.L. had told police that, on the night of the sexual assault, she and two friends, Chris and Derrick, had taken the bus across town. Because she needed money, B.L.'s friends advised her to go behind a restaurant, Bennigan's, to engage in prostitution. B.L. told police, "I would walk and cars would come to me. I would leave in their cars and go to different motels. I went with about five guys. The average I made per trick was about 50.00 dollars."

B.L. stated that she was standing at a bus stop when a man in a truck stopped. He was wearing an auto mechanics uniform with the name "David" on his shirt. The man was later determined to be Appellant.

Appellant asked B.L. how much she charged to give oral sex, and she responded $40 to $50. She noticed that Appellant's belt and pants were already undone. B.L. got in the truck with Appellant and told him to drive to Bennigan's. Instead, Appellant stopped near an abandoned warehouse. B.L. got out of the truck but returned at Appellant's request. Once she was back in the truck, Appellant then grabbed her and pulled her next to him in the seat. She indicated that Appellant then forced her to have oral and vaginal sex. B.L. said in her statement to police that

6

"[t]his was different from any sex I had that night. He was violent and aggressive. He was forceful in how he grabbed me. He caused a bruise on my neck."

B.L. told police that she was able to escape from Appellant's truck when he stopped at a convenience store to buy a cigar. She said that she was wearing only her socks when she ran from the truck. People at the store assisted her in calling the police. She said that she was then taken to the hospital for a sexual assault examination.

At the sentencing hearing, the defense's cross-examination sought to highlight discrepancies between B.L.'s testimony in which she indicated that she had not been working as a prostitute on the night of the sexual assault and had not negotiated sex for money with Appellant and her 2002 police statement in which she stated that she had been working as a prostitute that night and had negotiated to give Appellant oral sex for money.

On cross-examination, B.L. responded, "I don't recall," when questioned about the following information that she had provided in her statement: (1) whether she had been with her friends, Chris and Derrick, that night; (2) whether her friends had suggested she work as a prostitute that night at Bennigan's; (3) whether she had "negotiate[ed] prices with men that night" for sex; (4) whether she had "negotiated a price" with Appellant that night for sex; and (5) whether Appellant had asked her how much she charged for oral sex, and she had told him $40 to $50. B.L. testified

that she did not dispute that her statement to police reflected that she had made these statements; rather, she indicated that she could not remember the information.

The State objected on various grounds to a number of the defense's questions on cross-examination. It objected that some of the questions constituted improper impeachment and that others were argumentative. As the cross-examination progressed, the State also objected that questions had already been asked by the defense and answered by B.L., pointing out that B.L. had responded that she did not recall much of the information in the statement, which had indicated that she was working as a prostitute on the night of the sexual assault. The trial court sustained some of the State's objections and overruled others.

Texas Rule of Evidence 412 was mentioned during cross-examination by the trial court and by the State. Rule 412 was first mentioned when the defense asked B.L., "You had five tricks that particular evening and you were charging 40 to $50.00 apiece?" The following exchange then occurred:

> THE COURT: I'm sorry. Let me look at Rule [of Evidence] 412 please unless you're going to a different question.
>
> [Defense counsel]: No I'm going to that question Judge. I think she specifically said she was not prostituting that night.
>
> [The State]: And again Judge I believe the witness has testified she does not remember.
>
> [Defense counsel]: I have a right to ask her the question.

8

[The State]: For purposes of impeachment I believe she testified she has no recollection.

THE COURT: Sustained.

Nonetheless, the defense was then immediately permitted to elicit the following testimony:

Q. [Defense counsel] You were negotiating prices with men that night though weren't you?

A. I do not recall.

Q. And one of the men who you negotiated a price with was [Appellant] Mr. Cooper, isn't that correct, one of the men you negotiated a price with was Mr. Cooper who drove up in the truck. Isn't that correct ma'am?

A. I do not recall sir.

Rule 412 was mentioned again by the State in the following exchange:

Q. [Defense counsel] That particular evening Mr. Cooper asked you how much do you charge for head; you said 40 to $50.00. Is that correct?

A. I do not recall that being the discussion. I do recall getting in the vehicle.

Q. Now, had you gotten in the vehicle with any other gentlemen that evening?

[The State]: Objection. Irrelevant. Rule 412.

THE COURT: Sustained.

At the end of its cross-examination, the defense sought to admit B.L.'s 2002 statement into evidence. Over the State's objection, the trial court admitted B.L.'s statement as a defense exhibit.

After B.L. finished testifying, the State called two other women to testify. The first woman, M.L.S., testified that, in 2005, she was waiting for a bus after getting off work late at night. When she declined his offer of a ride, Appellant returned on foot, forcibly grabbed her, carried her to his truck, and threw her in the vehicle. A passer-by heard M.L.S.'s screams and came to her aid. Appellant was charged with the attempted kidnapping of M.L.S. and was later found guilty of the offense of unlawful restraint.

The second woman, D.B., testified that, in 2011, she accepted a ride from Appellant at a bus stop under the pretext that Appellant, an auto mechanic, would fix her car. When they arrived at D.B.'s apartment complex, Appellant asked for a glass of water. D.B. obliged, allowing Appellant in her apartment. Once inside her apartment, D.B. testified that Appellant pushed her down and forced her to have vaginal sex. She stated that, during the sexual assault, Appellant slapped her in the face, bit her lip, and threatened to kill her. D.B. was able to get away from Appellant by running upstairs to a balcony and screaming for help.

At the sentencing hearing, Appellant admitted his guilt to two unadjudicated sexual assault offenses pursuant to Texas Penal Code section 12.45.[1] One of these unadjudicated offenses was Appellant's sexual assault of D.B. The other was the sexual assault of another woman, R.N., who did not testify at the sentencing hearing.

After the State rested, the defense offered the testimony of one witness, a friend of Appellant's family. She testified that she had known Appellant for 10 years. The friend testified that Appellant was "a good family man that's always been there for his wife, his son and been helpful to me in the past."

During closing argument, Appellant asserted that, in sentencing him, the trial court should consider that he had accepted responsibility for his crimes by pleading guilty. The State argued that Appellant should be sentenced to life in prison because he was a serial offender who would continue to harm members of the community. At the end of the hearing, the trial court found Appellant guilty of the offense of sexual assault of a child, found the enhancement paragraph in the indictment to be true, and sentenced Appellant to life in prison.

---

[1] Section 12.45 provides that, during a sentencing hearing and with the State's consent, a defendant may admit his guilt of an unadjudicated offense and request that the court take the offense into account in determining the sentence for the offense of which he has been adjudged guilty. TEX. PENAL CODE ANN. § 12.45(a) (West 2011). If the trial court lawfully takes into account an admitted offense under section 12.45, prosecution for that offense is barred. *Id.* § 12.45(c).

This appeal followed. In one issue, Appellant contends that the trial court erred by not allowing him to cross-examine B.L., pursuant to Texas Rule of Evidence 412, regarding whether she engaged in prostitution on the night of the sexual assault. Appellant points out that, in her 2002 statement to police, B.L. indicated that she had engaged in prostitution that night, but on direct examination at the sentencing hearing, B.L. had indicated that she had not engaged in prostitution that night.

In his brief, Appellant asserts, "Defense counsel wanted to fully explore these inconsistencies through cross-examination as allowed by Texas Rule of Evidence 412 to mitigate the impression of this sexual assault being a forceful event." Appellant claims, "if [B.L.] was shown to be inconsistent on whether she was engaging in acts of prostitution on the night in question," then "it [is] also possible that she was stretching the truth" when she testified that Appellant used force to sexually assault her. Appellant points out that the offense for which he pleaded guilty—sexual assault of a child—contained no allegations of force. Appellant claims, "By leaving a false impression on the issue of force with the trial judge during the PSI [hearing], [Appellant] was harmed as he was later sentenced to life imprisonment." He asserts, "Had the inconsistencies [been] fully explored, the issue of force would have been more fully called into question for the trial judge's ultimate consideration."

**Discussion**

Rule of Evidence 412 generally prohibits the admission of evidence concerning "specific instances of a victim's past sexual behavior." TEX. R. EVID. 412(a)(2). However, Rule 412 does contain exceptions. One exception allows the admission of specific instances of a victim's past sexual behavior if it "is constitutionally required to be admitted." *Id.* R. 412(b)(2)(E). Even then, to be admissible, "the probative value of the evidence" must outweigh "the danger of unfair prejudice." *Id.* R. 412(b)(3). In his brief, Appellant asserts that "the evidence related to [B.L.'s] inconsistent statements and sexual history relating to prostitution should have been admitted under Rule [of Evidence] 412(b)(2)(E), and that by excluding the evidence, the trial court denied him his constitutional right to a full and fair confrontation of his accuser."[2] *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10.

The following portions of the defense's cross-examination contain the only questions overruled by the trial court that implicate Rule 412:

---

[2]  In his brief, Appellant also asserts that he should have been permitted to cross-examine B.L. about her false statement to police in 2002 in which she said that she was 18 years old. However, Appellant does not cite where in the record he sought to cross-examine B.L. regarding this issue. Nothing indicates that he was prevented from asking B.L. about what she told police regarding her age. And, on direct examination, B.L. admitted that she had lied to police about her name and her age to avoid being returned to foster care. In short, the trial court was aware that B.L. had not been truthful regarding her age.

13

Q. [Defense counsel] We're going to go back to what you told the prosecutor—where you told the prosecutor you were not doing any prostitution that particular night. Is that what you just told us earlier?

A. Not that I recall.

Q. But actually you were. You had had five gentlemen—you had five tricks that particular night.

Withdraw that question Judge.

[The State:] Object. Improper impeachment.

THE COURT: Overruled.

[The State:] Judge I think she testified that she doesn't remember.

[Defense counsel]: Pardon me.

THE COURT: I said overruled.

Q. [Defense counsel] You had five tricks that particular evening and you were charging 40 to $50.00 apiece?

[The State]: Additionally Judge we're going to object to.

Q. [Defense counsel] Going back to the events that happened ma'am—

THE COURT: I'm sorry. Let me look at Rule [of Evidence] 412 please unless you're going to a different question.

[Defense counsel]: No I'm going to that question Judge. I think she specifically said she was not prostituting that night.

[The State]: And again Judge I believe the witness has testified she does not remember.

[Defense counsel]: I have a right to ask her the question.

[The State]: For purposes of impeachment I believe she testified she has no recollection.

14

THE COURT: Sustained.

Q. [Defense counsel] You were negotiating prices with men that night though weren't you?

A. I do not recall.

Q. And one of the men who you negotiated a price with was [Appellant] Mr. Cooper, isn't that correct, one of the men you negotiated a price with was Mr. Cooper who drove up in the truck. Isn't that correct ma'am?

A. I do not recall sir.

Q. Are you saying you don't remember anything that happened that night?

A. I did not say that.

Q. You don't remember certain things, some things you remember and some things you don't. Is that correct?

A. Exactly.

Q. When you reviewed your statement did you tell the police officer I don't remember any of that; did you tell the police officer I don't remember any of that happening? I'll go to my next question. Mr. Cooper asked you how much do you charge for some head. Isn't that correct ma'am?

A. If that's what it says in the statement.

Q. You said 40 to $50.00?

A. I do not recall.

Q. And then you got into the vehicle. Isn't that correct ma'am?

A. Yes.

Q. I'm sorry.

15

A. Yes.

Q. You do remember that. I'm sorry ma'am I have to get a[n] answer from you. You do remember that?

A. Getting into the vehicle, yes.

Q. After you told him the price for some head you got into the vehicle?

[The State]: Judge, I'm going to object to argumentative at this point. I think it's confusing the witness because this is improper impeachment.

[Defense counsel]: Judge this is not impeachment. I'm going into the events that happened that night that's it.

THE COURT: Overruled.

[Defense counsel]: I'll rephrase the question.

Q. [Defense counsel] That particular evening Mr. Cooper asked you how much do you charge for head; you said 40 to $50.00. Is that correct?

A. I do not recall that being the discussion. I do recall getting in the vehicle.

Q. Now, had you gotten in the vehicle with any other gentlemen that evening?

[The State]: Objection. Irrelevant. Rule 412.

THE COURT: Sustained.

Q. [Defense counsel] But you did get in the car with Mr. Cooper?

A. Yes.

. . . .

Q. Would you pick up tricks at Bennigan's?

16

[The State]: Objection relevance.

THE COURT: Sustained.

Q. [Defense counsel] But you told [Appellant] to drive to Bennigan's?

A. I don't remember.

[The State]: Objection. Asked and answered.

THE COURT: Sustained.

The record shows that, at one point, the trial court sua sponte raised Rule 412 after the defense asked B.L.: "You had five tricks that particular evening and you were charging 40 to $50.00 apiece?" The record also shows that the State raised Rule 412 when the defense asked B.L. whether she had gotten in vehicles "with any other gentlemen that evening." And the State's relevance objection to the defense's question whether B.L. "would pick up tricks at Bennigan's" could also be construed as deriving from Rule 412.

However, the record also shows that Appellant made no argument in the trial court that either an exception to Rule 412 or the Confrontation Clause permitted him to elicit testimony from B.L. regarding whether she was engaging in prostitution on the night of the sexual assault. To preserve error as to a ruling excluding evidence, counsel must explain in the trial court why the proof in question is admissible and, on appeal, cannot predicate error on a ground different than that argued before the trial court. *Reyna v. State*, 168 S.W.3d 173, 179–80 (Tex. Crim. App. 2005).

17

Because he did not present any argument to the trial court regarding why the evidence should be admissible, we conclude Appellant did not preserve for appeal his appellate arguments regarding Rule of Evidence 412(b)(2)(E). *See* TEX. R. APP. P. 33.1(a)(1)(A); *Eaves v. State*, 141 S.W.3d 686, 693 (Tex. App.—Texarkana 2004, pet. ref'd) (holding that defendant failed to preserve error because he did not invoke any exceptions to Rule 412's general bar on evidence of alleged victim's past sexual behavior in trial court); *see also Bekendam v. State*, 441 S.W.3d 295, 300 (Tex. Crim. App. 2014) ("The complaining party must let the trial judge know what she wants and why she thinks she is entitled to it, and do so clearly enough for the judge to understand and at a time when the trial court is in a position to do something about it.). Nor did Appellant preserve his appellate argument relating to the Confrontation Clause. *See Reyna*, 168 S.W.3d at 179 (holding that arguments raised about hearsay did not preserve error premised on Confrontation Clause).

We overrule Appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.


Laura Carter Higley
Justice


18

Panel consists of Justices Jennings, Keyes, and Higley.

Do not publish. TEX. R. APP. P. 47.2(b).